UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.   § | CRIMINAL NO. 4:16-CR-178-SDJ |
| § | |
| GUSTAVO GARCIA-MIRANDA (1) § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Gustavo Garcia-Miranda's pro se Motion for Reduction in Sentence. (Dkt. #276). The Government has filed a response in opposition. (Dkt. #280). Having considered the parties' filings, the record, and the applicable law, the Court **DENIES** Garcia-Miranda's motion.

### I. BACKGROUND

Garcia-Miranda is currently serving a 168-month term of imprisonment at FCI Victorville Medium I to be followed by two years of supervised release, for conspiracy to possess with the intent to distribute 500 grams or more of methamphetamine or 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. § 846. His anticipated release date is December 29, 2028. Garcia-Miranda now requests that the Court reduce his sentence to time served, and, if he is not deported from the United States, to modify his term of supervised release to include home confinement.

### II. DISCUSSION

#### A. 18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683,

1

177 L.Ed.2d 271 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984. Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the Bureau of Prisons ("BOP") if the BOP could establish the following conditions: (1) extraordinary and compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)). Instead, Congress delegated that authority to the Sentencing Commission, directing it to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define "extraordinary and compelling reasons" and promulgated U.S.S.G. § 1B1.13. In application note 1 to Section 1B1.13, the Sentencing Commission described what circumstances constitute "extraordinary and compelling reasons" for purposes of

2

Section 3582(c)(1)(A)(i). U.S.S.G. § 1B1.13 cmt. n.1. The Sentencing Commission essentially created four categories of "extraordinary and compelling reasons," which can broadly be characterized as: (1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant; (3) issues arising from the defendant's family circumstances; and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case. *Id.* And because Section 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing Commission's policy statements issued pursuant to Section 994(t), the policy statements contained in Section 1B1.13 were binding on district courts considering Section 3582(c)(1)(A)(i) motions. *See United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's policy statements issued pursuant to 28 U.S.C. § 994 are binding on district courts when considering motions brought under 18 U.S.C. § 3582(c)).

In 2018, Congress amended Section 3582(c)(1)(A) with the passage of the First Step Act. The amendment provided that, in cases where the BOP does not file a compassionate-release motion on the prisoner's behalf, the prisoner may personally file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92. This was the First Step Act's only change to the compassionate-release framework. *Id.* at 391. Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, Section 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same. *See id.* at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

3

Following the First Step Act's expansion of who may file a motion under Section 3582(c)(1)(A), courts were confronted with the question of whether the Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate-release motions. The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to Section 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to Section 3582(c)(1)(A) motions filed by prisoners. 993 F.3d at 392.[1] Accordingly, while U.S.S.G. § 1B1.13 dictates the meaning of "extraordinary and compelling reasons" when a Section 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a Section 3582(c)(1)(A) motion is filed by a prisoner himself. *See id.* ("[T]he policy statement continues to govern where it says it governs—on the motion of the Director of the Bureau of Prisons. But it does not govern here—on the newly authorized motion of a prisoner." (quotation omitted)). Therefore, when a prisoner files a compassionate-release motion, courts must determine what constitutes an "extraordinary and compelling reason" under Section 3582(c)(1)(A)(i).

---

[1] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate-release motions filed by prisoners. *See, e.g., United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). *But see United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all Section 3582(c)(1)(A) motions).

**B. Extraordinary and Compelling Reasons**

Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is not wholly irrelevant. Courts should still look to the policy statement for guidance in determining what constitutes an "extraordinary and compelling reason" for a sentence reduction when a prisoner files a compassionate-release motion. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see also, e.g.*, *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."). Using the policy statement as guidance when considering prisoner-filed compassionate-release motions is warranted for several reasons.

First, whether a compassionate-release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same. Section 3582(c)(1)(A) provides that its requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). And as noted above, the First Step Act did not change Section 3582(c)(1)(A)'s substantive requirements. Thus, a policy

5

statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions necessarily informs what "extraordinary and compelling" means in the context of defendant-filed motions because the same standard governs both motions. In other words, Section 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern Section 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in Section 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf. *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling this exhaustion requirement would be a nonsensical exercise if the standard governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request. Defendants would request compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests based on the interpretation applicable to its motions. The fact that defendants must first ask the BOP to file their compassionate-release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under Section 3582(c)(1)(A).

Using U.S.S.G. § 1B1.13 and its commentary as guidance to determine what is extraordinary and compelling in defendant-filed motions is further warranted by

6

Congress's mandate that the Sentencing Commission, rather than courts, determine what constitute "extraordinary and compelling reasons" warranting a sentence reduction under Section 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to issue policy statements describing what constitute extraordinary and compelling reasons under Section 3582(c)(1)(A)); *Garcia*, 655 F.3d at 435 (concluding that Congress intended the Sentencing Commission's policy statements to be binding on courts in Section 3582(c) proceedings). To be sure, the Fifth Circuit has held that there is no binding policy statement applicable here because the Sentencing Commission has yet to amend its guidelines to account for the fact that defendants can now file compassionate-release motions. *See Shkambi*, 993 F.3d at 392. But Section 1B1.13 and its commentary still provide substantial insight into what the Sentencing Commission considers to be an "extraordinary and compelling reason" because the statutory standard the Sentencing Commission was applying when it promulgated Section 1B1.13 has not changed.

Nor does Section 1B1.13 become useless as guidance for defendant-filed compassionate-release motions simply because its terms state that it applies to motions brought by the Director of the BOP. Section 1B1.13 and its accompanying application notes "provide a working definition of 'extraordinary and compelling reasons'"—the standard that applies equally to BOP motions and prisoner motions. *Gunn*, 980 F.3d at 1180. Indeed, when the Sentencing Commission promulgated Section 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of

7

Section 3582(c)(1)(A). 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards governing prisoner motions and standards governing BOP motions. Rather, Section 994(t) directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under Section 3582(c)(1)(A). And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of Section 994(t)'s directive. *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t)."). Because Section 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing Commission's definition of Section 3582(c)(1)(A)'s terms is instructive when considering a prisoner's motion brought under Section 3582(c)(1)(A)(i).

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes. Therefore, any proffered "extraordinary and compelling reason" that is not contained in the Sentencing Commission's policy statement should nonetheless be similar to those reasons in order to warrant release under the statute. In this sense, the Court's analysis of whether Garcia-Miranda has presented "extraordinary and compelling reasons" warranting the sentence reduction he seeks will be significantly guided, though not strictly bound, by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

In *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023), the Fifth Circuit recently provided additional guidance on the construction of "extraordinary" and "compelling" in this context. The court noted that "extraordinary" may be understood to mean "beyond or out of common order," "remarkable," and synonymous with "singular." *Id.* at 186 (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY 903 (2d ed. 1934; 1950) ("WEBSTER'S SECOND")); *see also United States v. Jenkins*, 50 F.4th 1185, 1197 (D.C. Cir. 2022) (defining "extraordinary" as "most unusual," "far from common," and "having little or no precedent" (quotation omitted)). As for "compelling," the *Escajeda* court observed that this word, which is "a participle of 'compel,'" means "'to drive or urge with force, or irresistibly,' 'to force,' and 'to subjugate.'" *Id.* (quoting WEBSTER'S SECOND, *supra*, at 544). Taken together, and as used in Section 3582(c)(1), "[t]hese terms explain why prisoners can seek [compassionate release] only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id.*; *see also United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (discussing a "terminal illness" as described in U.S.S.G. § 1B1.13 as "a serious and advanced illness with an end of life trajectory").

## C. Garcia-Miranda's Motion

### i. Exhaustion

As an initial matter, the Court may consider Garcia-Miranda's compassionate-release motion only if he first meets Section 3582(c)(1)(A)'s exhaustion requirement. A court may not consider any modification to a defendant's sentence under Section 3582(c)(1)(A)(i) unless a motion for such a modification is made by the

9

Director of the BOP or by a defendant who has fully exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A). The Court may only consider the arguments made in the prisoner's administrative request through the BOP. *See United States v. Williams*, 62 F.4th 391, 393 (7th Cir. 2023) ("[A]n inmate must present to the Bureau the same reasons later presented to the court; permitting an inmate to argue new reasons in court amounts to bypassing a request for administrative relief.").

Garcia-Miranda submitted a memorandum requesting compassionate release to his warden, purportedly sent on May 6, 2022. (Dkt. #276-1). Therein, Garcia-Miranda requested compassionate release due to (1) sentencing error, (2) the COVID-19 pandemic, (3) his chronic underlying medical conditions, and (4) his post-sentencing rehabilitation. (Dkt. #276-1). On August 4, 2022, Garcia-Miranda filed this motion for compassionate release with the Court, in which he elaborates on the grounds previously put forth in his request to the BOP, but also adds a new claim, (5) the disparity in the Sentencing Guidelines between pure methamphetamine and mixtures thereof is overly harsh and empirically unfounded. (Dkt. #276).

Although the arguments presented in the motion to the Court are explained in far more detail than the list of reasons that Garcia-Miranda offered in his BOP request, the Government agrees that Garcia-Miranda has satisfied the administrative exhaustion requirement for the four grounds for release presented in the BOP request. (Dkt. #280 at 2–3). The Court will address each of these four arguments in turn. But Garcia-Miranda has failed to satisfy the administrative

10

exhaustion requirement on (5) the alleged disparity in the Sentencing Guidelines. Therefore, the Court need not assess the validity of this argument.[2]

### ii. "Extraordinary and Compelling" Reasons to Warrant Release

#### 1. Sentencing Error

Garcia-Miranda first argues that the Court erred in determining his sentence without applying an amendment to the Sentencing Guidelines, Amendment 790, that went into effect in 2015: several years before Garcia-Miranda was sentenced. (Dkt. #276 at 6–7); *see also Godwin v. United States*, No. 3:10-CR-276-34, 2018 WL 6172424, at *8 (M.D. Fla. Nov. 26, 2018) ("Amendment 790 went into effect on November 1, 2015 . . . ."). However, challenges to the legality or duration of a sentence must be raised through direct appeal or a habeas petition and cannot be pursued through Section 3582(c). *Escajeda*, 58 F.4th at 187–88; *Jenkins*, 50 F.4th at 1202. Therefore, the Court has no authority to consider this claim.

#### 2. The COVID-19 Pandemic and Chronic Underlying Medical Conditions

Next, Garcia-Miranda argues that prison conditions are exceedingly harsh due to COVID-19 protocols, including extended lockdowns, reduced showering, cold food, inadequate medical treatment, reduced library and recreation time, and lack of visitation. (Dkt. #276 at 8).

Garcia-Miranda expresses general fear of COVID-19 and suggests that his medical condition—obesity, tuberculosis, smoking history, and lingering

---

[2] The Court notes, however, that the Fifth Circuit has made clear that "a prisoner cannot use § 3582(c) to challenge the legality or duration of his sentence." *United States v. Escajeda*, 58 F.4th 184, 187 (5th Cir. 2023).

11

complications from a prior COVID-19 infection—makes him more vulnerable to potentially dangerous effects of another infection. (Dkt. #276 at 13). But these assertions are unpersuasive.

Neither Garcia-Miranda's medical profile nor his concern about repeat infection with COVID-19 constitutes an extraordinary and compelling reason to warrant his release. As explained, the Court first looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" contained in U.S.S.G. § 1B1.13 and its application notes. Garcia-Miranda's circumstances do not fall within the first category of "extraordinary and compelling reasons" identified by the Sentencing Commission—circumstances arising from certain medical conditions. Section 1B1.13's application note 1 provides the following two circumstances under which a defendant's medical condition may warrant a sentence reduction:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

12

U.S.S.G. § 1B1.13 cmt. n.1(A). Garcia-Miranda does not show that present conditions render him unable to engage in self-care. Thus, his argument does not comport with the plain text of application note 1 to U.S.S.G. § 1B1.13. The note is also written in the present tense. That is, the defendant must be presently suffering from a serious medical condition and such condition must presently diminish the defendant's capacity to engage in self-care in the environment of a correctional facility. By contrast, Garcia-Miranda's argument relies on the risk of his contracting COVID-19 in the future and the risk that COVID-19 would have serious effects on him.

Because the Fifth Circuit has held that the Sentencing Commission's definition of "extraordinary and compelling reasons" governs Section 3582(c)(1)(A)(i) motions only when such motions are filed by the BOP, Garcia-Miranda's failure to show that his circumstances fall within those described by the Sentencing Commission is not fatal to his motion. But as discussed above, the Court still looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" as significant guidance in construing that phrase as to defendant-filed motions. *See Thompson*, 984 F.3d at 433 (noting that the Sentencing Commission's commentary "informs [the] analysis" as to what constitute "extraordinary and compelling reasons" for defendant-filed compassionate-release motions). Accordingly, Garcia-Miranda's allegedly extraordinary and compelling reasons should be similar in kind to those enumerated by the Sentencing Commission. The Court also examines whether, under recent Fifth Circuit guidance, Garcia-Miranda has shown that he "face[s] some extraordinarily severe exigency, not foreseeable at the time of [his] sentencing," and

unique to Garcia-Miranda. *Escajeda*, 58 F.4th at 186. Garcia-Miranda has not shown that he faces any of the circumstances discussed in U.S.S.G. § 1B1.13, nor has he shown that he otherwise faces any "extraordinarily severe exigency."

The reasons Garcia-Miranda asserts as a basis for his release are unlike any of the reasons enumerated by the Sentencing Commission in its commentary to U.S.S.G. § 1B1.13. The circumstances in application note 1 all include significant hardships that are *presently* affecting the defendant, including where a medical condition or the aging process is presently causing the significant health problems or where the defendant has minor children or an incapacitated spouse who are presently left without a caregiver because of the defendant's incarceration. By contrast, Garcia-Miranda argues that he should be released because incarceration increases his risk of contracting COVID-19.

Of course, Garcia-Miranda's infection with COVID-19 is not guaranteed. Though he mentions lingering effects of his COVID-19 infection in 2020, his motion does not identify any significant medical hardships that he presently faces. Instead, he raises the concern that he is at risk for developing a significant hardship in the future *if* he contracts COVID-19. There is no analogous provision in Section 1B1.13 or its commentary where the increased *risk* of hardship caused by incarceration is considered an "extraordinary and compelling reason" as that phrase is used in 18 U.S.C. § 3582(c)(1)(A)(i). Further, although Garcia-Miranda tested positive for COVID-19 in October 2020, he received the Moderna vaccine in June 2021, July 2021,

14

and March 2022, (Dkt. #281 at 6, 26), reducing the likelihood of a serious re-infection in the near future.

Moreover, Garcia-Miranda's alleged health concern turns on his assertion that the United States remains in the midst of the COVID-19 pandemic. This is no longer true. Both international and domestic health authorities, particularly the World Health Organization,[3] the United States Centers for Disease Control and Prevention,[4] and the federal government,[5] have made clear that the COVID-19 pandemic has ended.[6] Thus, the premise of Garcia-Miranda's claim—namely, that the COVID-19 pandemic itself constitutes an "extraordinary and compelling reason" for his compassionate release—lacks any foundation going forward. Likewise, any residual risk that he faces from the virus is too speculative to constitute an extraordinary and compelling reason for release within the meaning of

---

[3] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV]; Aria Bendix, *WHO Declares End to Covid Global Health Emergency*, NBC NEWS (May 5, 2023), https://www.nbcnews.com/health/health-news/who-ends-covid-global-health-emergency-rcna83046 [https://perma.cc/ZP2G-K7TH].

[4] *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[5] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[6] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination." (quotations omitted)).

Section 3582(c)(1)(A)(i). And because Section 3582(c)(1)(a)(i) authorizes sentence reductions only for "extraordinary and compelling reasons" within the meaning of the statute, Garcia-Miranda's motion must be denied.

### 4. Post-Sentencing Rehabilitation

Finally, Garcia-Miranda offers evidence of his rehabilitation in prison. Garcia-Miranda has shown evidence of positive work evaluations and strong ties with his family. The Court commends Garcia-Miranda for these efforts. However, Garcia-Miranda has not presented any new, unforeseen, or exceptional circumstances that would warrant early release. Indeed, rehabilitation alone cannot justify a reduced sentence. 28 U.S.C. § 994(t); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022).

### iii. Section 3553(a) Factors

An examination of the factors set forth in 18 U.S.C. § 3553(a) also does not support Garcia-Miranda's motion to reduce his sentence. Garcia-Miranda was a participant in a drug-trafficking conspiracy that involved significant quantities of methamphetamine. (Dkt. #205 ¶¶ 11–12). Indeed, at the time of his arrest, Garcia-Miranda was in possession of roughly 5.9 kilograms of methamphetamine. (Dkt. #205 ¶¶ 11–12). Garcia-Miranda has failed to show how releasing him after serving approximately half of his sentence for a serious drug crime would align with the statutory sentencing factors—notably the seriousness of his offense, the need to promote respect for the law, the need to provide just punishment for the offense, and the need to deter others from similar criminality. 18 U.S.C. § 3553(a).

16

Considering all the relevant factors, the Court concludes that the sentence originally imposed remains sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a). Garcia-Miranda's motion is also denied on this basis.

### III. CONCLUSION

For the foregoing reasons, Defendant Gustavo Garcia-Miranda's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A), (Dkt. #276), is **DENIED**.

**So ORDERED and SIGNED this 31st day of October, 2023.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE